**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

RANDOLPH ALEXANDER,

                Plaintiff,

vs.                                                  Case No. 3:10-cv-287-J-32JRK

GOVERNMENT EMPLOYEES
INSURANCE COMPANY,

                Defendant.

**ORDER**

This case is before the Court on Plaintiff Randolph Alexander's First Motion in Limine to Limit Evidence at Trial to the Relevant Time Period (Doc. 66), to which Defendant Government Employees Insurance Company filed a response (Doc. 76). The Court heard oral argument on the motion on October 29, 2012, the transcript of which is incorporated herein (Doc. 77).

**I.    Background**

On December 28, 2005, Plaintiff Randolph Alexander was involved in a four-vehicle automobile accident. (Docs. 5 at 2; 47-2.) At the time of the accident, Alexander had an uninsured/underinsured ("UM") motorist insurance policy through GEICO in the amount of $50,000 per person/$100,000 per occurrence, and he reported the accident to GEICO on December 30, 2005. (Docs. 5 at 1-2, 6; 68 at 4; 49-1 at 1.) In September 2007, Alexander filed suit against GEICO, seeking payment of UM benefits. (Docs. 5 at 4; 49-1 at 15.)

On July 22, 2008, Alexander filed his first Civil Remedy Notice ("CRN"), to which

timely GEICO responded, but offered no money to settle the claim. (Docs. 47-17 at 1-3; 47-18 at 1-2; 49-1 at 18-19.) Alexander filed a second CRN against GEICO on January 28, 2009, alleging that GEICO did not make a reasonable offer with the information provided and acted unfairly toward Alexander. (Doc. 5 at 2, 37-38.) GEICO claims examiner Jackie Wallace responded to the CRN on March 4, 2009, denying that GEICO violated section 624.155 and stating that GEICO's evaluation of the claim remained "at less than the underlying carriers limits." (Doc. 47-22 at 1-2.) On April 30, 2009 – after the expiration of the second CRN – GEICO made an offer to settle the case for $25,000.00, which Alexander did not accept. (Doc. 49-1 at 26.)

The case proceeded to trial, and on July 17, 2009, the jury returned a verdict for Alexander in the amount of $242,177.41. (Doc. 5 at 4, 39.) The verdict was reduced to final judgment after all applicable setoffs in the amount of $212,356.95. (Id.) Thus, Alexander seeks to collect the balance of the verdict from GEICO based upon its alleged bad faith failure to settle within the $50,000 policy limits.

**II.     Discussion**

In his motion, Alexander avers that "the relevant time period for determining whether GEICO acted in bad faith is the expiration of the second [CRN], March 28, 2009, and evidence after that point in time is irrelevant and should not be admitted at trial." (Doc. 66 at 2.) He asserts that because a CRN is a condition precedent to bringing a bad faith cause of action, the improper conduct alleged must necessarily pre-date the expiration of the CRN. (Id. at 2-3.) Alexander contends that "[w]ith the exception of the amount of the underlying verdict, virtually everything else that transpired after the expiration of the second CRN is

irrelevant to the issue before the jury[.]" (Id. at 3.)  Further, he submits that any possible relevance of evidence post-dating GEICO's response to the CRN is "substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time." (Id. (internal quotation omitted).)

In response, GEICO argues that under Florida law, bad faith is to be evaluated under a "totality of the circumstances" standard, and "[l]imiting the time period to matters occurring [before] the second CRN expired would be misleading the jury regarding the actual events as they unfolded that played into the evaluation by GEICO in [its] offer of $25,000.00 after the mediation." (Doc. 76 at 2.)  GEICO avers that "the events that took place after the expiration of the second CRN directly impacted [its] evaluation and subsequent offer of $25,000.00." (Id. at 3.)  Additionally, GEICO contends that the events following the expiration of the CRN would not confuse the jury and are "directly relevant and material to GEICO's defense that [it] did not commit any bad faith in the investigation and evaluation of [Alexander]'s claim." (Id.)  GEICO asserts that the relief requested in Alexander's motion would be severely prejudicial to GEICO as well as "arbitrary and contrary to the applicable Florida bad faith law." (Id.)

A plaintiff may only bring a bad faith cause of action pursuant to section 624.155, Florida Statues, after an insurer fails to cure a valid CRN within the required sixty-day period. Lane v. Westfield Ins. Co., 862 So. 2d 774, 779 (Fla. 5th DCA 2003).  The statute provides, in pertinent part:

> (3)(a) As a condition precedent to bringing an action for bad faith under this section, the department and the authorized

3

> insurer must have been given 60 days written notice of the violation. . . .
>
> (b) The notice shall be on a form provided by the department and shall state with specificity the following information, and such other information as the department may require:
>
> 1. The statutory provision, including the specific language of the statute, which the authorized insurer allegedly violated.
>
> 2. The facts and circumstances giving rise to the violation.
>
> 3. The name of any individual involved in the violation.
>
> 4. Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.
>
> 5. A statement that the notice is given in order to perfect the right to pursue the civil remedy authorized by this section.
> . . . .
>
> (d) No action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected.

Fla. Stat. § 624.155(3)(a)-(b), (d).  Thus, "[i]n order to bring a claim for bad faith under Fla. Stat. § 624.155, the insured must first file a written Civil Remedy Notice of Insurer Violation with the Department of Insurance, as well as with its insurance company.  'The insurer then has sixty days in which to respond and, if payment is owed on the contract, to cure the claimed bad faith by paying the benefits owed on the insurance contract.'" Heritage Corp. of S. Fla. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA., 255 F. App'x. 478, 481 (11th Cir.

2007) (quoting Vest v. Travelers Ins. Co., 753 So. 2d 1270, 1275 (Fla. 2000)); see also Fla. Stat. § 624.155(3)(a); (3)(d).

In Talat Enterprises, Inc. v. Aetna Casualty & Surety Co., 753 So. 2d 1278, 1284 (Fla. 2000), the Florida Supreme Court explained that "in creating this statutory remedy for bad-faith actions, the Legislature provided this sixty-day window as a last opportunity for insurers to comply with their claim-handling obligations when a good-faith decision by the insurer would indicate that contractual benefits are owed." Accordingly, since "[t]he purpose of the [CRN] is to give the insurer one last chance to settle a claim with its insured and avoid unnecessary bad faith litigation[,]" Lane, 862 So. 2d at 779, it appears to run counter to the command and intent of section 624.155 to consider an insurer's conduct after the expiration of a CRN. See Paz v. Fidelity Nat'l Ins. Co., 712 So. 2d 807, 809 (Fla. 3d DCA 1998) (holding that the trial court erred in granting summary judgment for the insurer, because the insurer "did not pay the damages due within 60 days of the filing of the [CRN]"). For example, section 624.155(3)(b) requires the CRN to "state[] with specificity . . . the facts and circumstances giving rise to the violation," which leads to the logical conclusion that the conduct constituting the alleged bad faith must have occurred prior to the plaintiff filing the CRN.

Although the parties have not cited Florida case law directly on point – and the Court is unable to locate any – this conclusion also appears in alignment with related Florida bad faith case law. In Berges v. Infinity Insurance Company, 896 So. 2d 665, 672 (Fla. 2004), the Florida Supreme Court stated that "the question of bad faith . . . extends to [the insurer']s entire conduct in the handling of the claim, including the acts or omissions . . . in failing to

5

ensure payment of the policy limits <u>within the time demands</u>." (Emphasis added). In this case, "within the time demands" would have been within the sixty days prescribed under section 624.155 for GEICO "to respond [to the second CRN] and, if payment [was] owed on the contract, to cure the claimed bad faith by paying the benefits owed on the insurance contract." <u>See</u> <u>Vest</u>, 753 So. 2d at 1275. Thus, evidence of GEICO's actions taken after the expiration of the second CRN is not relevant to the issue of bad faith and will not be admissible at trial.[1]

Accordingly, it is hereby

**ORDERED**:

Alexander's First Motion in Limine to Limit Evidence at Trial to the Relevant Time Period (Doc. 66) is **GRANTED** as stated herein.[2]

**DONE AND ORDERED** at Jacksonville, Florida this 1st day of November, 2012.

_____
TIMOTHY J. CORRIGAN
United States District Judge

jk
Copies:

Counsel of record

---

[1] While the Court believes this decision to be legally correct, the Court also notes that the facts appear to be that GEICO was on notice of the pertinent facts well before the expiration of the second CRN.

[2] The Court has not yet determined whether the verdict and judgment in the underlying case are admissible, as Alexander contends.